**In re the MARRIAGE OF Susan M. DeWITT (Bronson), Appellant,**

**and**

**Eldon L. DeWitt Jr., Respondent.**

**No. WD 52784.**

Missouri Court of Appeals, Western District.

May 27, 1997.

Rehearing Denied July 1, 1997.

Connie Boysen Stallings, Laura E. Miller, Kansas City, for appellant.

Michael C. McIntosh, Independence, for respondent.

Before BRECKENRIDGE, P.J., and SMART and LAURA DENVIR STITH, JJ.

PER CURIAM.

On February 28, 1996, the trial court granted Petitioner–Appellant Susan Bronson's motion for modification of child support, and also entered a judgment of contempt against Respondent Eldon DeWitt for failure to pay back child support. Six weeks later, the court granted Mr. DeWitt's motion for relief from the judgment because of excusable neglect pursuant to Rule 74.06(b). Ms. Bronson appeals. We find that the trial court abused its discretion in granting the motion for relief from judgment because excusable neglect was not shown. Accordingly, we reverse and remand for reinstatement of the modification order and judgment of contempt.

## I.  FACTUAL BACKGROUND

The marriage of Susan Bronson ("Mother") and Eldon DeWitt ("Father") was dissolved on July 21, 1983. The decree of dissolution granted primary custody of the couple's three children to Mother. Father was ordered to pay $133.33 per month per child for child support. Mother is a Missouri resident. Father now resides in Florida. Because Father has continually refused to pay support since 1983, Mother was required to file motions for contempt in 1983, 1984, 1986, and 1988. On December 9, 1994, due to Father's further failure to pay child support, Mother again filed a motion for contempt. She also filed a motion to modify the decree of dissolution to increase child support. At the time of the motion, Father was delinquent in his support payments by $6,109.37. Father filed a responsive pleading on December 29, 1994.

Mother served her first interrogatories and a request for production of documents on December 12, 1994. She filed a motion to enforce discovery or impose sanctions on May 1, 1995. Father was given until June 12, 1995 to file his discovery responses. Florida counsel for Father contacted the court by letter and explained that Father had been seriously injured in a boating accident in June, 1994, and that Father had not retained Missouri counsel.

A hearing was set for April 24, 1995, but was continued. On the date the hearing had been scheduled, the court sent both counsel a letter stating, "Since the defendant, Mr. Eldon Loren DeWitt, Jr., lives out of state, please contact me immediately so that a special court setting may be arranged."

Neither party contacted the court immediately—or at all—to arrange a special setting. However, counsel for Petitioner did file a motion for discovery sanctions due to Father's failure to respond to discovery. On May 23, 1995, the trial court entered an order which stated that if Father did not file a response to Mother's discovery within 20 days the court would enter an order striking Father's pleadings. During this period, Florida counsel for Father sent a number of letters to the court and to counsel for Mother in which he explained that Father was recovering from surgery and that he would try to respond to discovery but that counsel was not a Missouri lawyer and was not entering an appearance. In fact, no discovery responses were ever filed and no counsel ever entered an appearance for Father.

The court finally set the case for a hearing on February 28, 1996. On February 20, 1996, Florida counsel for Father sent a letter to the courthouse in which he asked that the February 28, 1996 hearing be continued. In support, he stated that Father could not attend the hearing because he did not have the funds to attend the hearing and that he had recently started working and would jeopardize his job by attending. No formal motion for continuance was filed, however, and no attorney entered an appearance for Father. No explanation was given as to why Father had not hired local counsel. In addition, while the letter from Florida counsel

suggested that the parties had agreed on repayment without the need for a hearing, counsel for Mother made clear that no such agreement had been made on behalf of Mother.

Accordingly, the hearing was held as scheduled on February 28, 1996 before Judge Owens Hull, Jr., a visiting judge. Neither father nor anyone on his behalf appeared at the hearing. At the end of Mother's testimony, Judge Hull sanctioned father by striking his pleadings for his continued failure to respond to discovery in the nine months since the court's show cause order had been entered.

On March 1, 1996, the trial court entered its order modifying the child support provisions of the dissolution decree, finding a substantial and continuing change in circumstances. Father was ordered to pay support of $1,460.00 per month, retroactive to December 9, 1994, the date that the motion for modification was filed, and was ordered to pay Mother's attorney fees. Further, Mother was allowed to claim the three children as dependents upon her state and federal tax returns and Father was ordered to maintain health insurance coverage on the children. The court found that Father had voluntarily, knowingly, and contumaciously failed to pay support.

On March 27, 1996, Father filed a motion to set aside judgment pursuant to Rule 75.01; a motion to set aside judgment pursuant to Rule 74.05(d); and a motion to vacate pursuant to Rule 74.06(b).

The Honorable J.D. Williamson, Jr. overruled the motions to vacate pursuant to Rule 75.01 and 74.05(d). He sustained Father's motion for relief pursuant to Rule 74.06(b) on the basis of excusable neglect. Mother appeals, arguing that the trial court abused its discretion in sustaining Father's motion. We agree and remand the cause with instructions to reinstate the modification judgment of March 1, 1996 and the judgment of contempt and warrant for commitment of March 1, 1996.

## II. STANDARD OF REVIEW

■ The trial court has broad discretion to grant or deny a motion to vacate a judg-

ment, and its decision shall not be reversed unless the record clearly and convincingly proves an abuse of that discretion. *Clark v. Clark*, 926 S.W.2d 123, 126 (Mo.App.1996). An abuse of discretion is found where the ruling of the trial court is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Bowman v. McDonald's Corp.*, 916 S.W.2d 270, 276 (Mo. App.1995). Where reasonable people may differ about the propriety of the action that was taken by court, no abuse of discretion will be found. *State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804 (Mo. banc 1988).

## III. NONE OF THE THREE RULES GOVERNING THE SETTING ASIDE OF JUDGMENTS PROVIDES A BASIS FOR RELIEF

■ Father moved to set aside the judgment under each of the three Missouri rules governing the setting aside of judgments. Rule 75.01 gives the trial court control over its judgment for 30 days. While Father filed his motion to vacate within 30 days of the judgment, it was not ruled on during that period. Thus, Judge Williamson properly denied relief under that motion.

■ Father also moved for relief under Rule 74.05(d), which permits a default judgment to be set aside upon a motion stating facts constituting a meritorious defense and for good cause shown. Father recognizes that in *Cotleur v. Danziger*, 870 S.W.2d 234, 236 (Mo. banc 1994), the Missouri Supreme Court held that where, as here, a party has filed a responsive pleading but then has failed to appear at the hearing on his case, the resulting adverse judgment is a judgment on the merits, not a default judgment. Father argues that this rule should not apply here, however, because his pleadings were stricken as a sanction for his failure to respond to discovery. Therefore, he argues, it became as if he were in default, and Rule 74.05(d) should apply.

Father cites no authority to support his proposed rule, and we find none. To the contrary, we have previously specifically held that

[t]he rendition of judgment which follows the disallowance of a pleading for failure to obey a discovery order does not come by default, in the ordinary sense, but is treated as a judgment upon trial by the court.

*In Re Marriage of Dickey*, 553 S.W.2d 538, 539 (Mo.App.1977). *Accord J.B.C. v. S.H.C.*, 719 S.W.2d 866, 871 (Mo.App.1986). Public policy requires this result, for adoption of the rule suggested by Father would permit him to obtain a procedural benefit as a result of his failure to respond to discovery. This we will not allow. Whether or not his pleadings were stricken, Father had filed responsive pleadings and so joined issue in the case. Just as he could not then avoid a judgment on the merits by withdrawing his pleadings voluntarily, refusing to appear, or appearing but asking no questions and offering no evidence, so he cannot avoid a judgment on the merits just because his conduct was so egregious that the court struck his pleadings.

■ The third rule under which Father sought to set aside the judgment was Rule 74.06(b). Our Supreme Court has held that this rule requires the highest standard for setting the judgment aside so as to "give effect to the interests in stability of final judgments and precedent." *Cotleur*, 870 S.W.2d at 236. Rule 74.06(b) provides that a final judgment may be set aside within a certain period of time after judgment:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

In the instant case, Father's motion to vacate alleged "excusable neglect" as grounds for vacating the judgment against him. This Court, in *Gibson v. White*, 904

S.W.2d 22, 25 (Mo.App.1995), noted that "excusable neglect" is not defined in Rule 74.06(b), and that the case law did not provide a clear definition. It noted that the definition of "excusable neglect" found in Black's Law Dictionary provided:

> [F]ailure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party.

*Id.* (quoting Black's Law Dictionary 566 (6th ed.1990)).

Father argues that excusable neglect was shown here. He notes that in April 1995 the judge had indicated that the case would be specially set, and that he did not realize the magnitude of the issues which might be decided against him by not appearing. In support, in the trial court, he cited *Magee v. Magee,* 904 S.W.2d 514, 518–19 (Mo.App. 1995). In *Magee,* this Court recognized that a failure of counsel or a party to appear can be the result of excusable neglect where there was a legitimate misunderstanding by those involved as to the date or time of the hearing or who was to appear.

We disagree that Father's reasons for failing to appear either personally or by counsel constitute excusable neglect under Black's definition of that term, or under relevant Missouri case law. While the court below did indicate in its April 1995 letter that it would specially set the case, it said it would do so if the parties immediately contacted it with dates. Father did not contact the court with dates at any time. He is hardly in a position to complain that the court finally tired of waiting to hear from the parties and set the case for hearing on its own motion nine months later.

Father's actions in regard to the trial setting are consistent with the pattern of delay, over a decade long, shown by the record. The current action was instituted in 1994. Father had knowledge of the action, filed a responsive pleading, and again attempted to delay the proceedings. He did not respond to discovery requests, despite entry of an order to show cause in May 1995. While Father claims in some pleadings that he was too ill to travel, he filed no physician's affidavit or other evidence to back up this claim. Furthermore, this explanation contradicts the February 20, 1996 letter written by Florida counsel which explained that Father had a new job and that his attendance at the hearing might jeopardize his new position.

In either event, Father could have sent counsel to appear at the hearing on his behalf. Neither Florida counsel nor Father hired Missouri counsel, nor did they file a formal motion for continuance pending the hiring of local counsel. No counsel appeared at the hearing for Father. Father was, however, apparently able to retain Missouri counsel after the March 1, 1996 judgments were entered against him.

Father has not established that he exercised the diligence that a reasonable person would have exercised in the same or similar circumstances or that the neglect of the case occurred through no fault of his own. *See Willis v. Placke,* 903 S.W.2d 219, 221 (Mo. App.1995). Accordingly, we find that Father did not meet the "high standard" required to set the judgment aside.

For the reasons set out above, we find that the court abused its discretion in vacating the judgment. The order setting aside the judgment is reversed. The case is remanded with instructions to reinstate the modification judgment of March 1, 1996 and the judgment of contempt and warrant for commitment of March 1, 1996.